**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

S&S ACTIVEWEAR LLC AND BRODER
BROS., LLC d/b/a ALPHABRODER,

              Plaintiffs,

    v.

PROMO HUNT, INC.,

              Defendant.

Case No.: 1:25-cv-11214

Judge:  Hon. Thomas M. Durkin

**JURY TRIAL DEMANDED**

<u>**S&S'S OPPOSED MOTION FOR LEAVE TO AMEND ITS COMPLAINT**</u>

1

Pursuant to Federal Rule of Civil Procedure 15(a)(2) and this Court's order of December 19, 2025, D.E. 32, Plaintiffs S&S Activewear LLC ("S&S Activewear") and Broder Bros., LLC d/b/a alphabroder ("Alphabroder" and together with S&S Activewear, "S&S") respectfully move the Court for leave to file an Amended Complaint. S&S's counsel has conferred with counsel for Defendant Promo Hunt, Inc. ("PromoHunt"), and counsel for PromoHunt has indicated that it does not oppose S&S's motion with respect to the additional claims that S&S seeks to plead in its proposed Amended Complaint, nor its intention to name Bidpress LLC as a Defendant. Counsel for PromoHunt has otherwise indicated that it opposes this motion to the extent S&S seeks to voluntarily dismiss Alphabroder as a Plaintiff and name PromoHunt's Founder, President, and sole officer, Anthony "Tony" Wavering, as a Defendant.

Pursuant to Judge Durkin's Individual Rules, S&S attaches herewith a redline showing the amendments made to its initial complaint ("Complaint") as **Exhibit A** and a clean copy of S&S's proposed Amended Complaint as **Exhibit B**.

Further pursuant to Judge Durkin's Individual Rules, the parties agree to the following briefing schedule: PromoHunt's opposition shall be due on or by February 17, 2026, and S&S's reply shall be due on or by February 25, 2026.

In support of its opposed motion for leave to amend, S&S states as follows:

1. S&S filed its Complaint on September 16, 2025, alleging violations of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.* (Count I); the Defend Trade Secrets Act, 18 U.S.C. § 1836 (Count II); Common Law Misappropriation of Trade Secrets (Count III); Trespass to Chattels (Count IV); trademark violations under the Lanham Act, 15 U.S.C. § 1125(a) (Counts V, VI); and Tortious Interference with Contract (Count VII). D.E. 1.

2. PromoHunt filed a motion to dismiss S&S's trespass to chattels claim (Count IV of the Complaint), while answering the Complaint in all other respects on November 24, 2025. D.E.s 23–24, 26. S&S filed its opposition on December 12, 2025, D.E. 30, and PromoHunt filed its reply on December 24, 2025, D.E. 35.

3. On December 19, 2025, this Court ordered a schedule consistent with the parties' Joint Status Report submission, setting the deadline for amended pleadings to January 29, 2026. D.E. 32.

4. PromoHunt sought leave to amend its answer to assert an additional affirmative defense and seven counterclaims on January 16, 2026, D.E. 37. S&S did not oppose PromoHunt's motion, and the Court granted it on January 20, 2026, D.E. 38.

5. S&S now seeks leave to amend its Complaint to:

a. Voluntarily withdraw Alphabroder as a Plaintiff;

b. Voluntarily withdraw its Common Law Misappropriation of Trade Secrets claim (Count III);

c. Assert the following additional claims (a) violation of the Illinois Trade Secrets Act; (b) Tortious Interference with Business Relationships; (c) Breach of Contract; (d) violation of the Illinois Computer Crime Prevention Law; and (e) violation of the Illinois Uniform Deceptive Trade Practices Act; and

d. Name two additional Defendants: (1) Tony Wavering, PromoHunt's Founder, President, and sole officer; and (2) Bidpress LLC ("Bidpress").

6. Since filing its Complaint, S&S has further investigated the alleged misconduct of PromoHunt and Wavering. S&S learned that Wavering directed much of the misconduct underlying S&S's allegations. S&S previously understood that individuals from PromoHunt

3

registered for an S&S account under the guise of only placing orders. S&S has now learned that Wavering was one of those individuals, and used access to S&S's website to obtain an API Key, learn more about S&S's infrastructure, and, on information and belief, scrape S&S's proprietary information. S&S's preliminary investigation revealed that Wavering reapplied for login credentials multiple times to acquire new API Keys and acquire S&S's proprietary information. Moreover, S&S learned that, upon information and belief, Wavering also founded and operates Bidpress, a company that has an S&S account that S&S alleges is used to improperly scrape and use S&S's proprietary information for PromoHunt's Price Comparison Tool.

7.     S&S and Alphabroder have also become fully integrated since S&S first filed suit. Until recently, Alphabroder customers largely continued to navigate the Alphabroder website even after it was acquired by S&S, while S&S redirected activity to the S&S platform on the backend. As of January 2026, S&S integrated Alphabroder's offerings into a combined company, all operating under S&S Activewear LLC. Now that the two websites are fully integrated, Alphabroder customers can only use the S&S website. Accordingly, (1) S&S no longer conducts business under the trade name Alphabroder; (2) Alphabroder trademarks are no longer in use; and (3) Alphabroder no longer has a website or a digital footprint of any kind. In light of this integration, there is no legal purpose for Alphabroder to remain a named party.

8.     Federal Rule of Civil Procedure 15 directs that leave to amend a complaint should be "freely give[n] . . . when justice so requires." Fed. R. Civ. P. 15(a)(2). Leave to amend should be denied only when "there is undue delay, bad faith, dilatory motive, repeated failure to cure deficiencies, undue prejudice to the defendants, or where the amendment would be futile." *Johnson v. Cypress Hill*, 641 F.3d 867, 872 (7th Cir. 2011). None of these factors apply.

9.      No discovery requests have been issued by either party and thus there is no undue delay or prejudice to the Defendant.  *See Goldberg v. Rainbow Path, Inc.*, No. 96-cv-6548, 1997 WL 222949, at *2 (N.D. Ill. Apr. 25, 1997) (no undue prejudice when discovery had yet to begin).

10.      The existing Defendant, PromoHunt, has no basis to contest the addition of unnamed parties.  The addition of Wavering and Bidpress does not prejudice PromoHunt.  *See, e.g.*, *Manney v. Monroe*, 151 F. Supp. 2d 976, 996 n.27 (N.D. Ill. 2001) (even in relation-back context, "[w]hen considering the prejudice to the parties, however, it is not the other Defendants the Court is concerned about.").

11.      If S&S's motion is denied, it would instead initiate a second, separate action against Wavering.  Those actions would likely warrant consolidation, so denying leave to amend now would be inefficient.  *See Chapman v. Vill. of Homewood*, No. 96-cv-5297, 1997 WL 361413, at *2 (N.D. Ill. June 25, 1997) (granting motion to consolidate actions with similar issues of fact and law to conserve judicial resources); *Havrilesko v. Petry Home Builders, LLC*, No. 22-cv-50265, 2025 WL 3083123, at *3 (N.D. Ill. Apr. 2, 2025) (amending complaint to add new defendants better served judicial economy than requiring plaintiff to file new lawsuit).

Accordingly, S&S respectfully requests that the Court grant it leave to file the proposed Amended Complaint.

Dated: January 29, 2026

Yvette Ostolaza (*pro hac vice*)
**SIDLEY AUSTIN LLP**
2021 McKinney Ave, #2000
Dallas, Texas 75201
(214) 981-3300
yvette.ostolaza@sidley.com

/s/ *Steven J. Horowitz*
Steven J. Horowitz
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
shorowitz@sidley.com

Randi W. Singer
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
randi.singer@sidley.com

*Attorneys for Plaintiffs*

# EXHIBIT A

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS**

S&S ACTIVEWEAR LLC ~~AND BRODER BROS., LLC d/b/a ALPHABRODER,~~_,_

~~Plaintiffs~~Plaintiff,

v.

PROMO HUNT, INC.~~.~~; ANTHONY WAVERING; AND BIDPRESS LLC,

~~Defendant~~Defendants.

Civil Action No. 1:25-cv-11214

**JURY TRIAL DEMANDED**

**FIRST AMENDED COMPLAINT**

~~Plaintiffs~~Plaintiff S&S Activewear LLC ("S&S Activewear"~~) and Broder Bros., LLC d/b/a alphabroder ("Alphabroder" and together with S&S Activewear,~~ or "S&S"), by and through ~~their~~its undersigned counsel, ~~allege~~alleges the following causes of action against ~~Defendant~~Defendants Promo Hunt, Inc. ("PromoHunt")_; Anthony Wavering ("Wavering"); and Bidpress LLC ("Bidpress") (collectively, "Defendants"),_ based upon personal knowledge as to the company's own acts and upon information and belief as to all other matters.

**NATURE OF THE ACTION**

1. Plaintiff S&S, a leading technology-enabled distributor of apparel and accessories in North America, brings this lawsuit against ~~Defendant~~Defendants PromoHunt_, Wavering, and Bidpress_ for purloining its proprietary information, trademarks, and hard-earned business reputation to improve ~~its~~their own bottom line. Specifically, ~~Defendant's~~Defendants' business ~~model is~~models are to trespass on S&S's website to promote S&S's competitors and to divert S&S customers to ~~Defendant's own~~PromoHunt's website while misleading them into thinking

1

they are still shopping on S&S's website. ~~Defendant~~Defendants also ~~misappropriates~~misappropriate S&S's trademarks and proprietary information, including its real-time inventory and bespoke discounted pricing.

2. S&S of course does not take issue with buyers comparing and choosing among competing prices and products, but it vigorously objects to ~~Defendant's~~Defendants' misappropriation of its ~~own website~~trademarks and proprietary information to offer competitors a competitive advantage. And S&S strongly protests ~~Defendant~~PromoHunt's hijacking S&S's sales—by moving them to its own website behind the scenes—and using S&S's trademarks to do so.

3. S&S has spent years developing goodwill with thousands of registered businesses, who customize S&S's supply of imprintable apparel and accessories with their own creative designs for their customers, the end-users. S&S owns and operates the website www.ssactivewear.com ("S&S Site"). S&S's registered customers have access to bespoke discounted pricing, which depends on various factors including, but not limited to, the customer's previous order history, location, order volume, and loyalty. S&S also provides real-time inventory levels and shipping information to its registered customers. All of this information is considered S&S's confidential and proprietary information and is unavailable to the public. As such, S&S takes considerable measures to maintain its secrecy, including without limitation, providing a gated experience to only those customers who have approved accounts, not advertising any bespoke pricing in promotional materials, limiting the visibility of customer-specific prices to employees assigned to the customer's account, and employing security measures that prevent employees from downloading pricing reports and customer pricing information.

2

4. Defendant PromoHunt operates a website accessible at https://www.promohunt.com/ ("PromoHunt Site"). ~~Defendant~~ and offers a free browser extension. When a PromoHunt customer downloads the browser extension and visits a supplier website (such as the S&S Site), ~~Defendant's~~PromoHunt's toolbar pops up and displays direct competitors' products and pricing (the "Price Comparison Tool"). Superimposing the Price Comparison Tool over other content on the S&~~S's website~~S Site trespasses on valuable digital real estate that S&S has expended time, resources, and effort to make aesthetically and functionally appealing to its customers.

5. If customers click on a competing product shown by the Price Comparison Tool, they are redirected to ~~Defendant's website~~the PromoHunt Site, where S&S's products, trademarks and proprietary pricing and inventory are displayed alongside its ~~competitors's~~competitors' pricing and inventory, but misled because it appears that they are still browsing on the S&S Site. ~~Defendant~~PromoHunt did not have permission to use S&S's trademarks or to acquire or reveal proprietary information through the Price Comparison Tool, let alone use it to enable S&S's competitors to match or undercut its proprietary customer terms.



6. ~~Defendant's~~Defendants' misappropriation of S&S's proprietary information and trade secrets goes beyond pricing:  S&S customers do not choose on price alone, but also value S&S's shipping times ~~and~~, order accuracy, and personalized perks and incentives.  The correct quantity and delivery date of an order factors into a customer's choice to transact with S&S because of how important those markers are in this industry.  When ~~Defendant~~PromoHunt obscures the options available to S&S customers by pushing them onto a different site based on price alone, it also interferes with customers' ability to choose based on complete information.

7. On information and belief, ~~Defendant~~PromoHunt induces S&S registered users to provide or otherwise make available their login credentials or application programming interface key ("API Key") to ~~Defendant~~PromoHunt and/or to use these login credentials or API Keys to access the S&S Site in violation of its terms of use by requiring users to link their S&S account information after downloading the browser extension.

8. On information and belief, ~~Defendant~~Defendants PromoHunt, Wavering, and Bidpress may also scrape (*i.e.*, use an automated process to extract data) ~~trade secrets and other proprietary information~~data that is not publicly available from S&S's system, including customer-specific bespoke pricing ~~and~~, real-time inventory information, trade secrets and other proprietary information.  On information and belief, ~~Defendant stores~~Defendants store the improperly acquired, non-publicly available information, trade secrets and proprietary information and ~~makes~~make them available to S&S's competitors for price comparison either by furtively providing it to them or by displaying it on ~~its own website~~the PromoHunt Site.

4

9. Defendant PromoHunt also infringes S&S's trademarks by displaying and using them without authorization in a manner that is likely to confuse consumers into wrongly believing that S&S sponsors or endorses Defendant'sPromoHunt's services.

10. Despite requests to comply with S&S's terms of use, respect its intellectual property rights, and cease its unauthorized access to its site, DefendantDefendants continue to access proprietary S&S information without authorization, and PromoHunt continues to make its Price Comparison Tool available to trespass on the S&S Site, access proprietary S&S information without authorization and siphon off S&S direct sales, all the while infringing S&S trademarks and taking advantage of the goodwill earned by S&S's holistic excellence in product quality and deliverdelivery to market its own services.

## PARTIES

11. Plaintiff S&S Activewear LLC is a Delaware limited liability company with its principal place of business in Bolingbrook, Illinois.

In 2024, S&S Activewear LLC acquired 12. Plaintiff Broder Bros., LLC d/b/a Alphabroder is a Delaware limited liability company with its principal place of business in Trevose, Pennsylvania. S&S Activewear acquired Alphabroder in 2024, and completed integration of Alphabroder in 2025. S&S continues to deliver exceptional service by leveraging the strengths of both brand offerings.

1312. Upon information and belief, Defendant Promo Hunt, Inc. is a North Carolina company with its principal place of business in Raleigh, North Carolina.

13. Upon information and belief, Defendant Bidpress LLC is a New York limited liability company with its principal place of business in Asheville, North Carolina.

5

14.     Upon information and belief, Defendant Anthony Wavering is an individual residing in Asheville, North Carolina who is the Founder, President, and sole officer of PromoHunt and Bidpress.

**JURISDICTION AND VENUE**

~~14~~15.   This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because this action arises under the Lanham Act (15 U.S.C. § 1125(a)); the Computer Fraud and Abuse Act (18 U.S.C. § 1030); and the Defend Trade Secrets Act (18 U.S.C. § 1836).

~~15~~16.   This Court has supplemental jurisdiction over Illinois statutory and common law claims under 28 U.S.C. § 1367 because these claims arise from the same common nucleus of operative facts as S&S's federal claims, and the claims arising under state law are so related to such federal claims that they form part of the same case or controversy under Article III.

17.     This Court has personal jurisdiction over Defendant PromoHunt because it operates online across all jurisdictions and targeted, and continues to target, Illinois customers with promotion of its browser extension.  The PromoHunt Site is accessible in Illinois and PromoHunt specifically markets to distributors in Illinois.  For example, Defendant PromoHunt advertises coupons provided through the Promotional Professionals Association of Chicago-Wisconsin. https://promohunt.com/coupons.   And upon information and belief, Defendant PromoHunt has attended trade shows in Illinois, including without limitation, the ASI Show in Chicago in July 2023 and July 2024, directly advertising to Illinois residents in the state of Illinois.

~~16~~18.   This Court has personal jurisdiction over Defendant Wavering because ~~it~~he operates BidPress and PromoHunt online across all jurisdictions and has targeted, and continues to target, Illinois customers ~~with promotion of its~~through PromoHunt's browser extension. ~~The~~

~~PromoHunt Site is accessible in Illinois and Defendant~~, specifically ~~markets~~marketing to distributors in Illinois. ~~For example, Defendant advertises coupons provided through the Promotional Professionals Association of Chicago-Wisconsin. https://promohunt.com/coupons. And upon~~Upon information and belief, Defendant Wavering has attended trade shows in Illinois, including without limitation, the ASI Show in Chicago in July 2023 and July 2024, directly advertising to Illinois residents in the state of Illinois. ~~Defendant's Founder~~Defendant Wavering approached representative(s) from S&S on or about July 26, 2023 at the ASI Show in Chicago to introduce ~~Defendant's business~~PromoHunt. On or about July 23, 2024, ~~Defendant's Founder~~Defendant Wavering approached ~~an~~ S&S representative(s) at the ASI Show in Chicago in an effort to gain access to S&S's proprietary information, although no such authorization was provided.

19. This Court has personal jurisdiction over Defendant Bidpress because it operates online across all jurisdictions, including Illinois, and specifically markets to customers in Illinois. For example, Defendant Bidpress markets its products to recreational sports teams located in Chicago.

~~17.~~ ~~Defendant has~~20. Defendants PromoHunt, Wavering, and Bidpress also ~~agreed~~consented to this Court's jurisdiction because ~~Defendant agreed~~Defendants opened accounts, registered as users, and used the S&S website, which required agreement to the Terms of Use for the S&~~S's website when it registered as a user and these~~S Site. The Terms of Use provide: "You agree that this Agreement and the relationship between you and S&S will be governed by the laws of the State of Illinois, without respect to its conflict of laws provisions and that venue with respect to any dispute between you and S&S will rest exclusively in the state or federal courts located in Will County, Illinois."

7

1821. Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this District. Venue is also proper for Defendants PromoHunt and Bidpress under § 1391(b)(1) because ~~Defendant resides~~they reside in this District for purposes of such claims pursuant to § 1391(c)(2).

**FACTS**

**A.** **Plaintiff S&S and its Website**

1922. Founded in 1988, S&S is a leading, technology-enabled apparel and accessory supplier in the United States and Canada. S&S services a broad range of customers through its nationwide network, including retail brands, e-commerce companies, garment decorators, promotional products distributors, entertainment merchandisers, lifestyle brands and web-based platforms for apparel customization. S&S offers a large variety of brands, including basic garments to fashion-forward styles, and uniquely offers one-day shipping to the majority of states across the country. ~~Alphabroder was acquired by S&S Activewear in 2024, and S&S continues to deliver exceptional customer service, while leveraging the strengths of both brand offerings.~~

2023. S&S invests millions of dollars in creating and maintaining the S&S Site. It employs professional web developers, designers, and programmers to ensure the website is user-friendly, functional, and secure. S&S spends considerable sums taking its own product pictures, writing its own product descriptions, and creating its own marketing materials. It strives to showcase its products in an accurate and appealing manner that reflects the brands and its values. As a result of this investment, the S&S Site is a valuable asset that gives S&S a competitive edge in the wholesale apparel industry and helps attract and retain customers who

rely on the website for convenient, efficient, and personalized online shopping.  It also generates substantial revenue and goodwill for S&S.

24.     In 2024, S&S acquired Alphabroder, then a leading distributor of trade, retail and apparel brands and branded products.  In 2025, S&S integrated Alphabroder's offerings into a combined company that united two premier branded apparel distributors to better serve customers and suppliers across the diversified corporate and consumer markets.  As part of the transaction, S&S Activewear made significant investments in technology, the integration and expansion of its sales force, its supply chain and distribution capabilities, and the employee experience to create an organization that delivers significant benefits to its customers and industry partners.  The combined business allows customers—and ultimately end-consumers—to benefit from faster, more accurate order fulfillment and increased inventory across in-demand categories, while improved delivery and transportation logistics support significant savings in carbon emissions.

2125.   The S&S Site has both public and password-protected pages.  The public portions of the S&S Site allow customers to view S&S products and the starting prices for their products.  To access additional portions of the S&S Site and to make orders, S&S requires each customer to register with a unique username and password.  In order to create an account with S&S, customers must provide detailed business information and state issueda state-issued Resale Certificate, if applicable.  If a prospective customer meets certain eligibility criteria, S&S will onboard the customer.

2226.   Only registered customers may view custom pricing, place orders, view detailed product information, view their order history, and access S&S's real-time inventory information.

### B. Sensitive Customer Information

~~23~~27. For the convenience of its customers, S&S allows registered customers to save credit card and other sensitive information onto their accounts so that they do not have to provide it every time they place an order.

~~24~~28. S&S also provides credit lines, up to millions of dollars, to registered customers who have applied and been approved by S&S. Approved customers may access such credit lines to place orders by logging ~~into~~onto their account.

~~25~~29. S&S takes steps to protect the security of its customers' information, such as encrypting and storing it in secure servers. Further, S&S has a robust cybersecurity program and dedicated staff that monitor and maintain the security of customer data. The security of customer information is important to the integrity of S&S's proprietary computer networks as well as the level of confidence customers have in using the S&S Site.

### C. Terms of Use

~~26~~30. Visitors to both the public and password-protected portions of the S&S Site are subject to S&S's Terms of Use, available at https://www.ssactivewear.com/about/termsofuse ("S&S TOU").

~~27~~31. The S&S TOU limit the purposes for which users may access, use, or download the S&S Site's contents. Among the reasonable limitations that S&S places on its users, the S&S TOU prohibits customers from sharing their login and/or password information with any third party, using or exploiting the S&S Site for any commercial services, offering any portion of the S&S Site to a third party, and manipulating identifiers to disguise the origin of any data transmitted to or through the S&S Site. Specifically, the S&S TOU provides, in relevant part:

    a. *Section 2:* "Access to certain portions of this Site may require login and password information provided only to users and/or businesses who have registered (the "Registered Users"). Registered Users are responsible for

10

maintaining the security of their login credentials. The login, password, and API key, if provided by S&S, are provided for the use of the Registered User only are not transferable and may not be shared with other users or businesses. If you have received a login and password or API key that belong to another person, you are not authorized to use that login account or API key . . .”

b. *Section 6:* “If you choose to register as a Registered User, you agree that you will be responsible for maintaining your password as confidential, you will not share your login credentials with another user or business, and should you choose to share your login credentials with another user or business in violation of this Agreement, you will be responsible for any activity that occurs as a result.”

c. *Section 8:* “You are responsible for all of your User Content. Likewise, you are responsible for respecting S&S’s and third parties’ rights with respect to Content that appears on the Site and agree not to download, scrape, email or otherwise transmit such Content in violation of S&S's and third parties’ rights. You agree to use the Site solely to accommodate your own personal or business needs. Except as explicitly permitted and contemplated by the Services, you may not use or exploit any portion of the Site, Content or Services to provide any commercial services, ‘spam’ or other unsolicited communications to third parties or offer any portion of the Site or Content to any third party. You shall not use the Site or Services to: . . . Impersonate another person or entity, including without limitation, a representative or customer of S&S or its [] respective officers, directors, employees or agents, falsely represent or misrepresent your affiliation with another person or entity, or forge headers or otherwise manipulate identifiers that would disguise the origin of any User Content transmitted to or through the Site[ . .]” . .

   Additionally, you agree not to: . . . [c]opy, change, distribute, translate, decompile, disassemble, reverse engineer, loan, lease or sublicense software obtained from the Site or any copy thereof; . . . [u]se any device, software, or routine that interferes with the proper working of the Site; . . . [u]se another user’s or business’s login credentials or API key to access the Site; . . . or [o]therwise attempt to interfere with the proper working of the Site.”

d. *Jurisdiction and Venue:* “You agree that this Agreement and the relationship between you and S&S will be governed by the laws of the State of Illinois, without respect to its conflict of laws provisions and that venue with respect to any dispute between you and S&S will rest exclusively in the state or federal courts located in Will County, Illinois.”

11

28. Defendant is a32. Defendants are Registered UserUsers of S&S. By registering and accessing the public and password-protected portions of the S&S Site, DefendantDefendants agreed to abide by the S&S TOU.

**D.     Trademarks**

2933. S&S Activewear has for years used the trademarks "S&S" and "S&S ACTIVEWEAR," alone and in conjunction with distinctive logos featuring the letters S&S in a stylized font and color scheme (collectively, the "S&S Marks"), which it uses to identify and distinguish its goods and services from those of others:



3034. The S&S Marks have been continuously used in commerce since 1988. S&S Activewear's use of the S&S Marks has been continuous and exclusive, and they have acquired significant secondary meaning and customer goodwill. S&S Activewear owns all common law rights to the S&S Marks.

3135. S&S Activewear has attained strong name recognition in the S&S Marks. The S&S Marks have come to be associated with S&S and identify S&S as the source of wholesale distributorship services, online ordering services, and other goods and services offered in connection with the S&S Marks.

12

3236. S&S has invested hundreds of millions of dollars in advertising using the S&S Marks including in catalogs, tradeshows, events, digital marketing, and the S&S Site.

3337. S&S has developed substantial goodwill in the S&S Marks.

3438. The S&S Marks are among S&S's most important and valuable assets.

35. Alphabroder is the owner of multiple registered trademarks, including ALPHABRODER (U.S. Reg. 4744555), AB ALPHABRODER with a distinctive logo featuring the letters "ab" and "alphabroder" (U.S. Reg. 4744556), ALPHA (U.S. Reg. 2903274) and various BRODER marks in a stylized font and color scheme (U.S. Regs. 3056846, 3003365) (collectively, the "AB Marks"), which Alphabroder uses to identify and distinguish its goods and services, including wholesale distributorship services and online ordering services, from those of others.

36. ALPHABRODER (U.S. Reg. 4744555) has been used in commerce since January 6, 2014, and is incontestable.

37. AB ALPHABRODER (U.S. Reg. 4744556) has been used in commerce since January 6, 2014, and is incontestable.

38. ALPHA (U.S. Reg. 2903274) has been used in commerce since 1932 and is incontestable.

39. BRODER (U.S. Regs. 3056846; 3003365) has been used in commerce since January 14, 2004.

40. Alphabroder's (and now S&S's) use of the AB Marks have been continuous and exclusive. Alphabroder owns all common law rights to the AB Marks.

41. Alphabroder has attained strong name recognition in the AB Marks. The AB Marks have come to be associated with Alphabroder and identify Alphabroder (now S&S) as the

~~source of wholesale distributorship services and online ordering services and other goods and services offered in connection with the AB Marks.~~

~~42.    Alphabroder has developed substantial goodwill in the AB Marks.~~

~~43.    The AB Marks are among S&S's most important and valuable assets.~~

E.    ~~Defendant's~~**Defendants'** Unauthorized and Unlawful Activities

1.    The Price Comparison Tool Imposes on ~~Defendant's~~**S&S's** Website

~~44~~39.    S&S maintains its website to attract and retain customers.  S&S endeavors to showcase its products in an authentic and appealing way to generate revenue as well as to foster goodwill with loyal customers.  If the Price Comparison Tool has been downloaded, it automatically appears when a user navigates to the S&S Site, superimposed over content on the S&S Site and openly attempting to divert sales away from S&S with verbiage such as "better price available" and "see similar products" without any disclosure that it is third-party content.



14

4540. The Price Comparison Tool uses S&SS's confidential and proprietary information, trade secrets, and digital real estate to promote products in direct competition with S&S without S&S's authorization.

46. Defendant41. Defendants PromoHunt and Wavering intended to interfere with the S&S Site, a valuable asset, by displaying S&S's proprietary information on the Price Comparison Tool without permission. It further, on information and belief, does so in order to gain advertising dollars from S&S's competitors, who receive unauthorized access to prime real estate on the S&S Site when Defendant's toolthe Price Comparison Tool is downloaded and an otherwise unavailable opportunity to target S&S's customers in a misleading manner.

2. **The Price Comparison Tool Hijacks Sales and Diverts Users to Defendant'sPromoHunt's Website, Where it Displays Improperly Obtained Proprietary Information**

4742. When users click on other products on the Price Comparison Tool, they are diverted from the S&S Site to Defendant's websitethe PromoHunt Site without any disclosure. Upon information and belief, users believe that they are still on the S&S Site and may not understand that sales have been diverted. Defendant In addition, upon information and belief, S&S customers may make purchases from PromoHunt and on occasion, PromoHunt purchases goods from S&S to fulfill these orders. Upon information and belief, these customers are not able to take full advantage of S&S's advantageous and personalized pricing, shipping terms, or personalized incentives because Defendants insert themselves into the supply chain. Defendants PromoHunt and Wavering, therefore, intentionally interferesinterfere with the S&S Site to increase its ownPromoHunt's website traffic.

4843. On information and belief, after users download the browser extension, ~~Defendant~~PromoHunt requires users to link their S&S accounts, *i.e.*, upload or link their S&S login credentials or API Keys.



4944. Once users have done so, Defendant PromoHunt displays S&S's proprietary information, such as bespoke pricing and real-time inventory, on the Price Comparison Tool without S&S's authorization.

5045. On information and belief, Defendant PromoHunt scrapes proprietary information from the S&S Site in order to display it on ~~its website~~the PromoHunt Site after converting traffic from the S&S Site to its own. This gives S&S's competitors the means to interfere with prospective sales by matching or undercutting prices they would not otherwise have access to. Defendant PromoHunt also uses S&S's non-public inventory and pricing information in its promotional materials.

5146. The S&S TOU allows authorized S&S customers a limited license to access the S&S Site for specified, permitted uses. ~~Defendant's~~Defendants' actions have violated~~, or~~ and have caused S&S's customers to violate~~,~~ multiple provisions of the S&S TOU, including, but not limited to, Section 2, which explicitly provides that "the login, password, and API key, if provided by S&S, are provided for the use of the Registered User only are not transferable and

16

may not be shared with other users or businesses," and Section 8, which explicitly prohibits the use of "another user's or business's login credentials or API key to access the Site."

~~52~~47. On information and belief, some suppliers, including S&S's direct competitors, pay Defendant PromoHunt to be featured more prominently on the Price Comparison Tool and to get access to S&S's confidential and proprietary information, such as bespoke customer pricing, real-time inventory, and customer order history. The improperly scraped information Defendant PromoHunt provides these suppliers with ~~is~~ information they could not otherwise obtain, and it enables these suppliers to use S&S's own proprietary information to compete against S&S.

~~53~~48. On information and belief, Defendant PromoHunt improperly uses other users' login credentials and API Keys to acquire S&S's proprietary information in order to bolster the products of competitors, market its own services, and mislead prospective customers into believing that it has authorization to use S&S's proprietary information in these ways.

~~54~~49. On information and belief, ~~Defendant~~Defendants PromoHunt, Wavering, and Bidpress also improperly ~~uses its~~use their own accounts and API ~~Key by using it~~Keys to obtain S&S's proprietary information and trade secrets and ~~using~~use this information to market the Price Comparison Tool on the PromoHunt Site.

~~55.~~ ~~Defendant~~50. Defendants never received authorization to place S&S's proprietary information and trade secrets on its Price Comparison Tool; never received authorization to use S&S's proprietary information and trade secrets to market the Price Comparison Tool; and never received authorization to mislead the S&S Site visitors by redirecting them to ~~Defendant's~~the PromoHunt website, where ~~it also~~Defendant PromoHunt improperly displays S&S's proprietary information and trade secrets. Moreover, as ~~a~~ Registered

17

~~User~~Users of S&S ~~itself, Defendant~~, Defendants did all of the foregoing while subject to the S&~~S's terms of use~~S TOU, further indicating ~~its~~their intent to take advantage of S&S's success.

         **3.     ~~Defendant~~Defendants PromoHunt and Wavering Improperly ~~Uses~~Use S&S ~~and Alphabroder~~ Trademarks to Market ~~Itself~~PromoHunt**

~~56.~~    ~~Defendant has~~51.    Defendants PromoHunt and Wavering have also used the S&S Marks ~~and AB Marks~~ in commerce to advertise ~~its~~PromoHunt's services in a manner likely to confuse consumers as to its association, affiliation, endorsement, or sponsorship with or by S&S.

~~57~~52.    The PromoHunt Site features and/or has featured the S&S Marks and ~~the AB Marks and~~ displays images from the S&S Site. ~~Defendant's Founder, Tony~~Defendant Wavering~~,~~ demonstrates in a promotional video how the Price Comparison Tool works. In doing so, he prominently features the S&S Marks ~~and AB Marks~~:



18



58. Defendant53. Defendants PromoHunt and Wavering never received authorization to use the S&S Marks or the AB Marks.

**F.** **Defendant's Defendants' Unauthorized and Unlawful Actions Continued Even After Receiving a Cease and Desist Letter**

5954. On April 2, 2025, S&S sent a cease and desist letter to Defendant Wavering, notifying Defendanthim that itsPromoHunt's access to the S&S Site violated the S&S TOU, that itPromoHunt was inducing S&S customers to violate the S&S TOU, and that DefendantPromoHunt was infringing on its intellectual property rights.

6055. On information and belief, Defendant continuesDefendants continue to access or isare attempting to access S&S's computer systems and the S&S Site even after receiving the April 2, 2025, cease and desist letter.

19

## CLAIMS FOR RELIEF

### ~~COUNT~~Count I:
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*
### Against All Defendants

~~61~~56.  S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

~~62~~57.  The S&S Site and servers are involved in interstate and foreign commerce and are protected computers under 18 U.S.C. § 1030(e)(2).

~~63~~58.  Defendant PromoHunt knowingly accessed proprietary information via the Price Comparison Tool.

~~64~~59.  On information and belief, ~~Defendant~~Defendants PromoHunt, Wavering, and Bidpress knowingly accessed S&S's proprietary information from the S&S Site through scraping.

~~65.~~  ~~Defendant's~~60.  Defendants' access was without authorization or in excess of authorization as defined by the S&S TOU, because the purpose of the access was to disclose non-public proprietary information to competitors and hijack sales from the S&S Site by redirecting consumers to ~~Defendant's site~~the PromoHunt Site.

~~66~~61.  S&S has suffered damage and loss, aggregating at least $5,000 in value in any one-year period, including, but not limited to, lost sales.

~~67.~~  ~~Defendant's~~62.  Defendants' unlawful access to and theft of S&S's proprietary information through unauthorized access of the data on the S&S Site caused S&S irreparable injury.  Unless restrained and enjoined, ~~Defendant~~Defendants will continue such acts. S&S's remedies at law are not adequate to compensate it for these threatened injuries, entitling S&S to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

20

**Count II:**
**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (DTSA), 18**
**18 U.S.C. § 1836**
**Against All Defendants**

63. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

64. S&S sells its products and services in interstate commerce, transacting and doing business with customers throughout the United States.

65. S&S's trade secrets encompass customer-specific pricing information and real-time inventory, which is not publicly available and is not readily ascertainable by others in the industry.

66. S&S has taken considerable measures to maintain the secrecy of its customer pricing and real-time inventory information, including by requiring registered customers input a password to access to their custom pricing and requiring customers to agree to the S&S TOU, which prohibits the disclosure or unauthorized use of such information.

67. S&S's customer pricing and real-time inventory information derives independent economic value from being kept secret. Exposing such information could enable competitors to undercut S&S's pricing and divert customers.

68. Aggregating such information taken from many different customers enables DefendantDefendants or S&S's competitors with whom Defendant shares suchDefendants share such information to reverse engineer S&S's pricing strategy and inventory strategy, which provides a competitive advantage.

74. Defendant69. Defendants knowingly used improper means to acquire S&S's customer pricing and real-time inventory information when itthey used S&S customer login

21

credentials and/or API Keys without authorization to access S&S's computer systems and customer accounts or in excess of authorization under the S&S TOU.

75~~70~~. On information and belief, ~~Defendant has~~Defendants have provided S&S's competitors with its pricing information and inventory information.

76~~71~~. Further, ~~Defendant has~~Defendants PromoHunt and Wavering have featured S&S's proprietary information in ~~its~~ promotional materials for the Price Comparison Tool and on ~~its website~~the PromoHunt Site after diverting users from the S&S Site to its own via the Price Comparison Tool.

77~~72~~. S&S has been and will continue to be damaged as the result of ~~Defendant's~~Defendants' misappropriation of S&S's valuable pricing and real-time inventory information.

**~~COUNT~~Count III:**
**~~Common Law Misappropriation of~~Violation of the Illinois Trade Secrets Act, 765 ILS 1065 Against All Defendants**

78~~73~~. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

79~~74~~. S&S's customer-specific pricing information and real-time inventory is not publicly available and is not readily ascertainable by others in the industry.

80~~75~~. S&S has taken considerable measures to maintain the secrecy of its customer pricing, including by requiring registered customers input a password to access ~~to~~ their custom pricing and requiring customers to agree to the S&S TOU, which prohibits the disclosure or unauthorized use of such information.

22

8176. S&S's customer pricing information derives independent economic value from being kept secret. Exposing such information could enable competitors to undercut S&S's pricing and divert customers.

82. Aggregating77. The pricing and inventory information takenthat Defendants stole from many different customers enables Defendant or S&S's competitors with whom Defendant shares such information to reverse engineerreveals S&S's pricing strategy and inventory strategy, which provides a competitive advantage.

83. Defendant78. Defendants knowingly used improper means to acquire S&S's customer pricing and inventory information when it used S&S customer login credentials and/or API Keys without authorization to access S&S's computer systems and customer accounts or in excess of authorization under the S&S TOU.

8479. On information and belief, Defendant hasDefendants have provided S&S's competitors with its pricing information.

8580. Further, Defendant hasDefendants PromoHunt and Wavering have featured S&S's proprietary information in its promotional materials for the Price Comparison Tool and on its websitethe PromoHunt Site after diverting users from the S&S Site to its own via the Price Comparison Tool.

8681. S&S has been and will continue to be damaged as the result of Defendant'sDefendants' misappropriation of S&S's valuable pricing and real-time inventory information.

**Count IV:**
**Trespass to Chattels**
**Against Defendant PromoHunt**

8782. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

8883. The S&S Site is valuable digital real estate that S&S has invested extensive resources in. Websites, just like brick and mortar assets, are property. S&S has increased its website's value by attracting more than 100,000 active customers on its website annually, averaging 50,000 users completing an online purchase each month.

8984. Defendant PromoHunt intentionally and without permission from S&S interfered with S&S's possessory interest in its website by improperly displaying the Price Comparison Tool on the S&S Site. Defendant'sDefendant PromoHunt's Price Comparison Tool takes away digital real estate from the S&S Site while promoting Defendant'sDefendant PromoHunt's own content, as well as the products of S&S's direct competitors, who on information and belief pay Defendant PromoHunt for this product placement.

9085. By blocking some of the contents of the S&S Site, the Price Comparison Tool substantially interferes with and impairs the S&S Site's published output.

9186. Placing the Price Comparison Tool on the S&S's siteS Site interferes with prospective sales by affording competitors the opportunity to match or undercut prices it would not otherwise have access to. The Price Comparison Tool's diversion of S&S customers away from the S&S Site and to Defendant'sDefendant PromoHunt's own website also directly interferes with S&S's sales by drawing away potential purchases.

9287. As a direct and proximate result of Defendant's conduct, the S&S Site has been materially devalued. Defendant's conduct has alsoDefendant PromoHunt's conduct, S&S has suffered damages, including but not limited to S&S's substantial expenditure of resources to investigate and remediate Defendant PromoHunt's conduct, and to hire a third-party service to

24

do the same. Defendant PromoHunt's conduct has also materially devalued the S&S Site and exposed S&S to potential reputational and professional harm.

**Count V:**
**Trademark Infringement, 15 U.S.C. § 1125(a)**
**Against Defendants PromoHunt and Anthony Wavering**

~~93~~88. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

~~94~~89. S&S owns the S&S Marks ~~and Alphabroder owns the AB Marks~~, which ~~they use~~it uses to identify and distinguish S&S's goods and services from those of others. At all relevant times, ~~Defendant~~Defendants PromoHunt and Wavering exercised ownership or control over online promotion for its services and websites and knowingly infringed S&S's trademark rights in online promotion for ~~its~~PromoHunt's services and website.

~~95.~~ ~~Defendant's~~90. Defendants PromoHunt and Wavering's use of the S&S Marks ~~and the AB Marks~~ in interstate commerce is likely to cause customer confusion or to cause mistake or to deceive as to the origin of the services offered and sold by Defendant PromoHunt and as to their affiliation, connection, or association with and/or endorsement or approval by S&S.

~~96.~~ ~~Defendant is~~91. Defendants PromoHunt and Wavering are using and ~~has~~have used more of the S&S Marks ~~and the AB Marks~~ than reasonably necessary to identify S&S's products and services, including in ~~its~~PromoHunt's own marketing materials.

~~97.~~ ~~Defendant has~~92. Defendants PromoHunt and Wavering have used and ~~continues~~continue to use marks identical to the S&S Marks ~~and the AB Marks~~ in violation of 15 U.S.C. § 1125(a).

98. Defendant's93. Defendant PromoHunt and Defendant Wavering's use of the S&S Marks and AB Marks has caused and, unless enjoined by this Court, will continue to cause injury to S&S's goodwill and reputation, for which S&S has no adequate remedy at law.

**Count VI:**
**False Sponsorship, 15 U.S.C. § 1125(a)**
**Against Defendants PromoHunt and Anthony Wavering**

9994. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

100. Defendant's95. Defendant PromoHunt and Defendant Wavering's use in commerce of the S&S Marks and the AB Marks is likely to cause consumer confusion by creating the false and misleading impression that S&S (and its goods and services) are associated or connected with Defendant PromoHunt, or have the sponsorship, endorsement or approval of S&S. They do not.

101. Defendant's96. Defendant PromoHunt and Defendant Wavering's use of the S&S Marks and the AB Marks has caused and, unless enjoined by this Court, will continue to cause, injury to S&S's goodwill and reputation, for which S&S has no adequate remedy at law.

102. Defendant's97. Defendant PromoHunt and Defendant Wavering's use of the S&S Marks and the AB Marks has caused S&S to lose sales and/or Defendant PromoHunt to profit.

103. Defendant's98. Defendant PromoHunt and Defendant Wavering's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the S&S Marks and the AB Marks and have caused S&S irreparable harm.

10499. Defendant hasPromoHunt and Defendant Wavering have caused and isare likely to continue causing substantial injury to the public and to S&S. S&S is therefore entitled to

26

injunctive relief and to recover ~~Defendant's~~Defendant PromoHunt's profits, and/or S&S's actual damages, as well as S&S's costs and ~~attorney~~attorneys' fees under 15 U.S.C. §§ 1116 and 1117.

**Count VII:**
**Tortious Interference with Contract**
**Against Defendants PromoHunt and Anthony Wavering**

~~105~~100.    S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

~~106~~101.    S&S has valid and enforceable contracts with its registered customers, who agree to abide by the S&S TOU when they access the S&S Site.

~~107~~102.    The S&S TOU allows authorized S&S customers a limited license to access the S&S Site for use permitted in the TOU.

~~108~~103.    The S&S TOU ~~prohibit~~prohibits users from sharing their login information with other users or businesses.

~~109~~104.    The S&S TOU prohibits users from downloading, using, or exploiting any portion of the S&S Site to provide any commercial services.

~~110~~105.    The S&S TOU prohibits users from sharing S&S's data with any other business or user.

~~111.~~ ~~Defendant~~106. Defendants PromoHunt and Wavering knew or should have known of the existence of the terms of the S&S TOU because ~~it is a~~they are Registered ~~User~~Users.

~~112.~~ ~~Defendant~~107. Defendants PromoHunt and Wavering intentionally and improperly caused S&S's customers to breach the S&S TOU by soliciting, obtaining, or using ~~customer's~~customers' login credentials or API Keys to access the password-protected portions of the S&S Site and to scrape S&S's confidential and proprietary business information.

27

113. Defendant's108. Defendant PromoHunt and Wavering's intentional interference with S&S's contractual relations with its customers was without justification.

114109. As a direct and proximate result of Defendant'sDefendant PromoHunt and Defendant Wavering's tortious interference with S&S's contracts, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendant'sDefendants' unauthorized access to S&S's systems.

**Count VIII:**
**Tortious Interference with Business Relationships**
**Against Defendants PromoHunt and Anthony Wavering**

110. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

111. S&S has spent years developing strong business relationships with its customers, who customize S&S's supply of imprintable apparel and accessories with their own creative designs for their customers, the end-users.

112. Defendant PromoHunt and Defendant Wavering knew or should have known of the business relationship between S&S and its customers.

113. Defendant PromoHunt and Defendant Wavering purposefully and knowingly interfered with S&S's business relationships with its customers by superimposing the Price Comparison Tool over the content on S&S's website and diverting S&S customers to the PromoHunt Site without any disclosure. Upon information and belief, S&S's customers believe that they are still on the S&S Site and may make purchases from PromoHunt rather than directly from S&S. Because Defendants insert themselves into the supply chain, S&S customers are not able to take full advantage of S&S's proprietary pricing and shipping.

114. Defendant PromoHunt and Defendant Wavering further purposefully and knowingly interfered with S&S's business relationships with its customers by causing its customers to violate the S&S TOU, which states in Section 8, for example, that registered users may not "[c]opy, change, distribute, translate, decompile, disassemble, reverse engineer, loan, lease or sublicense software obtained from the Site or any copy thereof"; "[u]se any device, software, or routine that interferes with the proper working of the Site"; "[u]se another user's or business's login credentials or API key to access the Site"; or "[o]therwise attempt to interfere with the proper working of the Site."

115. Defendant PromoHunt and Defendant Wavering's interference with S&S's business relationships with its customers was intentional, willful, and malicious through its use of the Price Comparison Tool to increase PromoHunt's website traffic and divert sales away from S&S.

116. As a direct and proximate result of Defendant PromoHunt and Defendant Wavering's tortious interference with S&S's business relationships, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendant PromoHunt's unauthorized access to S&S's systems.

**Count IX:**
**Breach of Contract**
**Against All Defendants**

117. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

118. Defendants are registered users of S&S.

29

119. Defendants consented to the S&S TOU by creating accounts and using them to access the public and password-protected portions of the S&S Site.

120. The S&S TOU is a valid and enforceable contract between S&S and Defendants.

121. S&S substantially performed under the terms of the contract by allowing Defendants a limited license to access the S&S Site for specified, permitted uses.

122. Section 2 of the S&S TOU states: "If you have received a login and password or API key that belong to another person, you are not authorized to use that login account or API key." On information and belief, Defendants PromoHunt and Wavering used other customers' login accounts and/or API keys to access the S&S Site in violation of Section 2.

123. Section 8 of the S&S TOU states:

You are responsible for all of your User Content. Likewise, you are responsible for respecting S&S's and third parties' rights with respect to Content that appears on the Site and agree not to download, scrape, email or otherwise transmit such Content in violation of S&S's and third parties' rights. You agree to use the Site solely to accommodate your own personal or business needs. Except as explicitly permitted and contemplated by the Services, you may not use or exploit any portion of the Site, Content or Services to provide any commercial services, 'spam' or other unsolicited communications to third parties or offer any portion of the Site or Content to any third party. You shall not use the Site or Services to: . . . Impersonate another person or entity, including without limitation, a representative or customer of S&S or its [] respective officers, directors, employees or agents, falsely represent or misrepresent your affiliation with another person or entity, or forge headers or otherwise manipulate identifiers that would disguise the origin of any User Content transmitted to or through the Site.

124. Section 8 further states that Registered Users agree not to: "[c]opy, change, distribute, translate, decompile, disassemble, reverse engineer, loan, lease or sublicense software obtained from the Site or any copy thereof"; "[u]se any device, software, or routine that interferes with the proper working of the Site"; "[u]se another user's or business's login

30

credentials or API key to access the Site"; or "[o]therwise attempt to interfere with the proper working of the Site."

125. Upon information and belief, Defendants used their S&S accounts to provide commercial services; specifically, upon information and belief, Defendants downloaded, scraped, or otherwise transmitted S&S's confidential and proprietary business information from the Site in order to create the Price Comparison Tool.

126. Upon information and belief, Defendants used and exploited the S&S Site and its content to provide their own commercial services, including by creating the Price Comparison Tool and directing users from the S&S Site to the PromoHunt Site in breach of Section 8 of the S&S TOU.

127. As a direct and proximate result of Defendants' breaches of the S&S TOU, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendants' unauthorized access to S&S's systems.

**Count X:**
**Violation of Illinois Computer Crime Prevention Law, 720 ILCS 5/17-51(a)(4)**
**Against Defendants PromoHunt and Wavering**

128. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

129. Upon information and belief, Defendant PromoHunt and Defendant Wavering knowingly and without authorization by S&S inserted the Price Comparison Tool onto S&S's customers' browsers knowing that the program or commands would cause loss to S&S.

130. Defendant PromoHunt and Defendant Wavering's actions were without authorization or in excess of authorization as defined by the S&S TOU, because the purpose of

31

the Price Comparison Tool is to disclose non-public proprietary information to competitors and hijack sales from the S&S Site by redirecting consumers to the PromoHunt Site.

131. As a direct and proximate result of Defendant PromoHunt's conduct, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendant PromoHunt's unauthorized access to S&S's systems.

**Count XI:**
**Violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510**
**Against Defendants PromoHunt and Anthony Wavering**

132. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

133. Defendant PromoHunt and Defendant Wavering engaged in deceptive trade practices by using in commerce the Price Comparison Tool on the S&S Site and the S&S Marks, which is likely to cause consumer confusion or misunderstanding as to the source, sponsorship, approval, or certification of S&S's services.

134. Defendant PromoHunt and Defendant Wavering's actions demonstrate an intentional, willful, and malicious intent to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of S&S's services.

135. Defendant PromoHunt and Defendant Wavering have caused and are likely to continue causing substantial injury to the public and to S&S. S&S is therefore entitled to injunctive relief and to recover costs and attorneys' fees.

**JURY DEMAND**

~~115~~136. Pursuant to Federal Rule of Civil Procedure 38(b), ~~Plaintiffs demand~~Plaintiff demands a trial by jury.

**PRAYER FOR RELIEF**

116. Defendant137. Defendants and all of itstheir agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from DefendantDefendants, or in concert or participation with DefendantDefendants, and each of them, be enjoined permanently from:

   a. Imposing itsthe Price Comparison Tool on the S&S Site;

   b. Using any S&S user's login credentials or API Key to access the S&S Site;

   c. Extracting or scapingscraping content from the S&S Site;

   d. Using the S&S Marks or AB Marks or any other confusingly similar copy, reproduction, colorable imitation, or simulation of the S&S Marks or AB Marks on or in connection with its businesstheir businesses;

   e. Displaying confidential and proprietary S&S pricing and inventory information on the PromoHunt Site and in advertisements, social media posts, and promotional videos; and

   f. Violating, or causing others to violate, any provisions of S&S's TOU.

117. Defendant138. Defendants be compelled to account to S&S for any and all profits derived by DefendantDefendants from itstheir infringing and violative acts.

118139. S&S be awarded all damages caused by the acts forming the basis of this Complaint.

119140. S&S's actual damages, Defendant'sDefendants' profits, and the costs of the action, including attorneyattorneys' fees, under 15 U.S.C. § 1117(a).

120141. S&S be awarded prejudgment and post-judgment interest on all monetary awards.

121142. S&S be granted such other and further relief as this Court may deem just and proper.

Dated: ~~September 16, 2025~~January 29, 2026

Yvette Ostolaza (*pro hac vice forthcoming*)
**SIDLEY AUSTIN LLP**
2021 McKinney Ave, #2000
Dallas, Texas 75201
(214) 981-3300
yvette.ostolaza@sidley.com

/s/ Steven J. Horowitz
Steven J. Horowitz
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
shorowitz@sidley.com

Randi W. Singer
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
randi.singer@sidley.com

*Attorneys for ~~Plaintiffs~~Plaintiff*

34

| Summary report: Litera Compare for Word 11.13.0.54 Document comparison done on 1/29/2026 6:07:18 PM | |
|---|---|
| **Style name:** Sidley Default | |
| **Intelligent Table Comparison:** Active | |
| **Original DMS:** nd://4909-6400-0892/1/S&S-PromoHunt Complaint.docx | |
| **Modified DMS:** nd://4910-9204-1867/1/SS-PromoHunt First Amended Complaint.docx | |
| **Changes:** | |
| Add | 353 |
| Delete | 289 |
| Move From | 2 |
| Move To | 2 |
| Table Insert | 0 |
| Table Delete | 0 |
| Table moves to | 0 |
| Table moves from | 0 |
| Embedded Graphics (Visio, ChemDraw, Images etc.) | 1 |
| Embedded Excel | 0 |
| Format changes | 0 |
| **Total Changes:** | 647 |

# EXHIBIT B

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS

S&S ACTIVEWEAR LLC,

Plaintiff,

v.

PROMO HUNT, INC.; ANTHONY
WAVERING; AND BIDPRESS LLC,

Defendants.

Civil Action No. 1:25-cv-11214

**JURY TRIAL DEMANDED**

## FIRST AMENDED COMPLAINT

Plaintiff S&S Activewear LLC ("S&S Activewear" or "S&S"), by and through its undersigned counsel, alleges the following causes of action against Defendants Promo Hunt, Inc. ("PromoHunt"); Anthony Wavering ("Wavering"); and Bidpress LLC ("Bidpress") (collectively, "Defendants"), based upon personal knowledge as to the company's own acts and upon information and belief as to all other matters.

## NATURE OF THE ACTION

1.      Plaintiff S&S, a leading technology-enabled distributor of apparel and accessories in North America, brings this lawsuit against Defendants PromoHunt, Wavering, and Bidpress for purloining its proprietary information, trademarks, and hard-earned business reputation to improve their own bottom line.  Specifically, Defendants' business models are to trespass on S&S's website to promote S&S's competitors and to divert S&S customers to PromoHunt's website while misleading them into thinking they are still shopping on S&S's website.  Defendants also misappropriate S&S's trademarks and proprietary information, including its real-time inventory and bespoke discounted pricing.

1

2.      S&S of course does not take issue with buyers comparing and choosing among competing prices and products, but it vigorously objects to Defendants' misappropriation of its trademarks and proprietary information to offer competitors a competitive advantage.  And S&S strongly protests PromoHunt's hijacking S&S's sales—by moving them to its own website behind the scenes—and using S&S's trademarks to do so.

3.      S&S has spent years developing goodwill with thousands of registered businesses, who customize S&S's supply of imprintable apparel and accessories with their own creative designs for their customers, the end-users.    S&S owns and operates the website www.ssactivewear.com ("S&S Site").   S&S's registered customers have access to bespoke discounted pricing, which depends on various factors including, but not limited to, the customer's previous order history, location, order volume, and loyalty.  S&S also provides real-time inventory levels and shipping information to its registered customers.  All of this information is considered S&S's confidential and proprietary information and is unavailable to the public.  As such, S&S takes considerable measures to maintain its secrecy, including without limitation, providing a gated experience to only those customers who have approved accounts, not advertising any bespoke pricing in promotional materials, limiting the visibility of customer-specific prices to employees assigned to the customer's account, and employing security measures that prevent employees from downloading pricing reports and customer pricing information.

4.      Defendant      PromoHunt      operates      a      website      accessible      at https://www.promohunt.com/ ("PromoHunt Site") and offers a free browser extension.  When a PromoHunt customer downloads the browser extension and visits a supplier website (such as the S&S Site), PromoHunt's toolbar pops up and displays direct competitors' products and pricing (the "Price Comparison Tool").  Superimposing the Price Comparison Tool over other content on

the S&S Site trespasses on valuable digital real estate that S&S has expended time, resources, and effort to make aesthetically and functionally appealing to its customers.

5.      If customers click on a competing product shown by the Price Comparison Tool, they are redirected to the PromoHunt Site, where S&S's products, trademarks and proprietary pricing and inventory are displayed alongside its competitors' pricing and inventory, but misled because it appears that they are still browsing on the S&S Site. PromoHunt did not have permission to use S&S's trademarks or to acquire or reveal proprietary information through the Price Comparison Tool, let alone use it to enable S&S's competitors to match or undercut its proprietary customer terms.



6.      Defendants' misappropriation of S&S's proprietary information and trade secrets goes beyond pricing: S&S customers do not choose on price alone, but also value S&S's shipping times, order accuracy, and personalized perks and incentives. The correct quantity and delivery date of an order factors into a customer's choice to transact with S&S because of how important those markers are in this industry. When PromoHunt obscures the options available to S&S

3

customers by pushing them onto a different site based on price alone, it also interferes with customers' ability to choose based on complete information.

7. On information and belief, PromoHunt induces S&S registered users to provide or otherwise make available their login credentials or application programming interface key ("API Key") to PromoHunt and/or to use these login credentials or API Keys to access the S&S Site in violation of its terms of use by requiring users to link their S&S account information after downloading the browser extension.

8. On information and belief, Defendants PromoHunt, Wavering, and Bidpress may also scrape (*i.e.*, use an automated process to extract data) data that is not publicly available from S&S's system, including customer-specific bespoke pricing, real-time inventory information, trade secrets and other proprietary information. On information and belief, Defendants store the improperly acquired, non-publicly available information, trade secrets and proprietary information and make them available to S&S's competitors for price comparison either by furtively providing it to them or by displaying it on the PromoHunt Site.

9. Defendant PromoHunt also infringes S&S's trademarks by displaying and using them without authorization in a manner that is likely to confuse consumers into wrongly believing that S&S sponsors or endorses PromoHunt's services.

10. Despite requests to comply with S&S's terms of use, respect its intellectual property rights, and cease its unauthorized access to its site, Defendants continue to access proprietary S&S information without authorization, and PromoHunt continues to make its Price Comparison Tool available to trespass on the S&S Site and siphon off S&S direct sales, all while infringing S&S trademarks and taking advantage of the goodwill earned by S&S's holistic excellence in product quality and delivery to market its own services.

4

**PARTIES**

11.     Plaintiff S&S Activewear LLC is a Delaware limited liability company with its principal place of business in Bolingbrook, Illinois.  In 2024, S&S Activewear LLC acquired Broder Bros., LLC d/b/a Alphabroder, and completed integration of Alphabroder in 2025.  S&S continues to deliver exceptional service by leveraging the strengths of both brand offerings.

12.     Upon information and belief, Defendant Promo Hunt, Inc. is a North Carolina company with its principal place of business in Raleigh, North Carolina.

13.     Upon information and belief, Defendant Bidpress LLC is a New York limited liability company with its principal place of business in Asheville, North Carolina.

14.     Upon information and belief, Defendant Anthony Wavering is an individual residing in Asheville, North Carolina who is the Founder, President, and sole officer of PromoHunt and Bidpress.

**JURISDICTION AND VENUE**

15.     This Court has jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1338 because this action arises under the Lanham Act (15 U.S.C. § 1125(a)); the Computer Fraud and Abuse Act (18 U.S.C. § 1030); and the Defend Trade Secrets Act (18 U.S.C. § 1836).

16.     This Court has supplemental jurisdiction over Illinois statutory and common law claims under 28 U.S.C. § 1367 because these claims arise from the same common nucleus of operative facts as S&S's federal claims, and the claims arising under state law are so related to such federal claims that they form part of the same case or controversy under Article III.

17.     This Court has personal jurisdiction over Defendant PromoHunt because it operates online across all jurisdictions and targeted, and continues to target, Illinois customers with promotion of its browser extension.  The PromoHunt Site is accessible in Illinois and PromoHunt

5

specifically markets to distributors in Illinois. For example, Defendant PromoHunt advertises coupons provided through the Promotional Professionals Association of Chicago-Wisconsin. https://promohunt.com/coupons. And upon information and belief, Defendant PromoHunt has attended trade shows in Illinois, including without limitation, the ASI Show in Chicago in July 2023 and July 2024, directly advertising to Illinois residents in the state of Illinois.

18. This Court has personal jurisdiction over Defendant Wavering because he operates BidPress and PromoHunt online across all jurisdictions and has targeted, and continues to target, Illinois customers through PromoHunt's browser extension, specifically marketing to distributors in Illinois. Upon information and belief, Defendant Wavering has attended trade shows in Illinois, including without limitation, the ASI Show in Chicago in July 2023 and July 2024, directly advertising to Illinois residents in the state of Illinois. Defendant Wavering approached representative(s) from S&S on or about July 26, 2023 at the ASI Show in Chicago to introduce PromoHunt. On or about July 23, 2024, Defendant Wavering approached S&S representative(s) at the ASI Show in Chicago in an effort to gain access to S&S's proprietary information, although no such authorization was provided.

19. This Court has personal jurisdiction over Defendant Bidpress because it operates online across all jurisdictions, including Illinois, and specifically markets to customers in Illinois. For example, Defendant Bidpress markets its products to recreational sports teams located in Chicago.

20. Defendants PromoHunt, Wavering, and Bidpress also consented to this Court's jurisdiction because Defendants opened accounts, registered as users, and used the S&S website, which required agreement to the Terms of Use for the S&S Site. The Terms of Use provide: "You agree that this Agreement and the relationship between you and S&S will be governed by the laws

of the State of Illinois, without respect to its conflict of laws provisions and that venue with respect to any dispute between you and S&S will rest exclusively in the state or federal courts located in Will County, Illinois."

21.     Venue is proper in this District under 28 U.S.C. § 1391(b)(2) because a substantial part of the events giving rise to the claims raised in this lawsuit occurred in this District.  Venue is also proper for Defendants PromoHunt and Bidpress under § 1391(b)(1) because they reside in this District for purposes of such claims pursuant to § 1391(c)(2).

## FACTS

### A.     Plaintiff S&S and its Website

22.     Founded in 1988, S&S is a leading, technology-enabled apparel and accessory supplier in the United States and Canada.  S&S services a broad range of customers through its nationwide network, including retail brands, e-commerce companies, garment decorators, promotional products distributors, entertainment merchandisers, lifestyle brands and web-based platforms for apparel customization.  S&S offers a large variety of brands, including basic garments to fashion-forward styles, and uniquely offers one-day shipping to the majority of states across the country.

23.     S&S invests millions of dollars in creating and maintaining the S&S Site.  It employs professional web developers, designers, and programmers to ensure the website is user-friendly, functional, and secure.  S&S spends considerable sums taking its own product pictures, writing its own product descriptions, and creating its own marketing materials.  It strives to showcase its products in an accurate and appealing manner that reflects the brands and its values. As a result of this investment, the S&S Site is a valuable asset that gives S&S a competitive edge in the wholesale apparel industry and helps attract and retain customers who rely on the website

for convenient, efficient, and personalized online shopping.  It also generates substantial revenue and goodwill for S&S.

24.     In 2024, S&S acquired Alphabroder, then a leading distributor of trade, retail and apparel brands and branded products.  In 2025, S&S integrated Alphabroder's offerings into a combined company that united two premier branded apparel distributors to better serve customers and suppliers across the diversified corporate and consumer markets.  As part of the transaction, S&S Activewear made significant investments in technology, the integration and expansion of its sales force, its supply chain and distribution capabilities, and the employee experience to create an organization that delivers significant benefits to its customers and industry partners.  The combined business allows customers—and ultimately end-consumers—to benefit from faster, more accurate order fulfillment and increased inventory across in-demand categories, while improved delivery and transportation logistics support significant savings in carbon emissions.

25.     The S&S Site has both public and password-protected pages.  The public portions of the S&S Site allow customers to view S&S products and the starting prices for their products. To access additional portions of the S&S Site and to make orders, S&S requires each customer to register with a unique username and password.  In order to create an account with S&S, customers must provide detailed business information and a state-issued Resale Certificate, if applicable.  If a prospective customer meets certain eligibility criteria, S&S will onboard the customer.

26.     Only registered customers may view custom pricing, place orders, view detailed product information, view their order history, and access S&S's real-time inventory information.

**B.      Sensitive Customer Information**

27.     For the convenience of its customers, S&S allows registered customers to save credit card and other sensitive information onto their accounts so that they do not have to provide it every time they place an order.

28.     S&S also provides credit lines, up to millions of dollars, to registered customers who have applied and been approved by S&S.  Approved customers may access such credit lines to place orders by logging onto their account.

29.     S&S takes steps to protect the security of its customers' information, such as encrypting and storing it in secure servers.  Further, S&S has a robust cybersecurity program and dedicated staff that monitor and maintain the security of customer data.  The security of customer information is important to the integrity of S&S's proprietary computer networks as well as the level of confidence customers have in using the S&S Site.

## C.     Terms of Use

30.     Visitors to both the public and password-protected portions of the S&S Site are subject to S&S's Terms of Use, available at https://www.ssactivewear.com/about/termsofuse ("S&S TOU").

31.     The S&S TOU limit the purposes for which users may access, use, or download the S&S Site's contents.  Among the reasonable limitations that S&S places on its users, the S&S TOU prohibits customers from sharing their login and/or password information with any third party, using or exploiting the S&S Site for any commercial services, offering any portion of the S&S Site to a third party, and manipulating identifiers to disguise the origin of any data transmitted to or through the S&S Site.  Specifically, the S&S TOU provides, in relevant part:

   a. *Section 2:* "Access to certain portions of this Site may require login and password information provided only to users and/or businesses who have registered (the "Registered Users"). Registered Users are responsible for maintaining the security of their login credentials. The login, password, and API key, if provided by S&S, are provided for the use of the Registered User only are not transferable and may not be shared with other users or businesses. If you have received a login and password or API key that belong to another person, you are not authorized to use that login account or API key . . ."

9

b. *Section 6:* "If you choose to register as a Registered User, you agree that you will be responsible for maintaining your password as confidential, you will not share your login credentials with another user or business, and should you choose to share your login credentials with another user or business in violation of this Agreement, you will be responsible for any activity that occurs as a result."

c. *Section 8:* "You are responsible for all of your User Content. Likewise, you are responsible for respecting S&S's and third parties' rights with respect to Content that appears on the Site and agree not to download, scrape, email or otherwise transmit such Content in violation of S&S's and third parties' rights. You agree to use the Site solely to accommodate your own personal or business needs. Except as explicitly permitted and contemplated by the Services, you may not use or exploit any portion of the Site, Content or Services to provide any commercial services, 'spam' or other unsolicited communications to third parties or offer any portion of the Site or Content to any third party. You shall not use the Site or Services to: . . . Impersonate another person or entity, including without limitation, a representative or customer of S&S or its [] respective officers, directors, employees or agents, falsely represent or misrepresent your affiliation with another person or entity, or forge headers or otherwise manipulate identifiers that would disguise the origin of any User Content transmitted to or through the Site . . . .

Additionally, you agree not to: . . . [c]opy, change, distribute, translate, decompile, disassemble, reverse engineer, loan, lease or sublicense software obtained from the Site or any copy thereof; . . . [u]se any device, software, or routine that interferes with the proper working of the Site; . . . [u]se another user's or business's login credentials or API key to access the Site; . . . or [o]therwise attempt to interfere with the proper working of the Site."

d. *Jurisdiction and Venue:* "You agree that this Agreement and the relationship between you and S&S will be governed by the laws of the State of Illinois, without respect to its conflict of laws provisions and that venue with respect to any dispute between you and S&S will rest exclusively in the state or federal courts located in Will County, Illinois."

32. Defendants are Registered Users of S&S. By registering and accessing the public and password-protected portions of the S&S Site, Defendants agreed to abide by the S&S TOU.

**D.      Trademarks**

33. S&S Activewear has for years used the trademarks "S&S" and "S&S ACTIVEWEAR," alone and in conjunction with distinctive logos featuring the letters S&S in a

10

stylized font and color scheme (collectively, the "S&S Marks"), which it uses to identify and distinguish its goods and services from those of others:



34.     The S&S Marks have been continuously used in commerce since 1988. S&S Activewear's use of the S&S Marks has been continuous and exclusive, and they have acquired significant secondary meaning and customer goodwill. S&S Activewear owns all common law rights to the S&S Marks.

35.     S&S Activewear has attained strong name recognition in the S&S Marks. The S&S Marks have come to be associated with S&S and identify S&S as the source of wholesale distributorship services, online ordering services, and other goods and services offered in connection with the S&S Marks.

36.     S&S has invested hundreds of millions of dollars in advertising using the S&S Marks including in catalogs, tradeshows, events, digital marketing, and the S&S Site.

37.     S&S has developed substantial goodwill in the S&S Marks.

38.     The S&S Marks are among S&S's most important and valuable assets.

**E.     Defendants' Unauthorized and Unlawful Activities**

**1.     The Price Comparison Tool Imposes on S&S's Website**

39.     S&S maintains its website to attract and retain customers. S&S endeavors to showcase its products in an authentic and appealing way to generate revenue as well as to foster

11

goodwill with loyal customers. If the Price Comparison Tool has been downloaded, it automatically appears when a user navigates to the S&S Site, superimposed over content on the S&S Site and openly attempting to divert sales away from S&S with verbiage such as "better price available" and "see similar products" without any disclosure that it is third-party content.



40. The Price Comparison Tool uses S&S's confidential and proprietary information, trade secrets, and digital real estate to promote products in direct competition with S&S without S&S's authorization.

41. Defendants PromoHunt and Wavering intended to interfere with the S&S Site, a valuable asset, by displaying S&S's proprietary information on the Price Comparison Tool without permission. It further, on information and belief, does so in order to gain advertising dollars from S&S's competitors, who receive unauthorized access to prime real estate on the S&S Site when the Price Comparison Tool is downloaded and an otherwise unavailable opportunity to target S&S's customers in a misleading manner.

12

**2.    The Price Comparison Tool Hijacks Sales and Diverts Users to PromoHunt's Website, Where it Displays Improperly Obtained Proprietary Information**

42.    When users click on other products on the Price Comparison Tool, they are diverted from the S&S Site to the PromoHunt Site without any disclosure.  Upon information and belief, users believe that they are still on the S&S Site and may not understand that sales have been diverted.  In addition, upon information and belief, S&S customers may make purchases from PromoHunt and on occasion, PromoHunt purchases goods from S&S to fulfill these orders.  Upon information and belief, these customers are not able to take full advantage of S&S's advantageous and personalized pricing, shipping terms, or personalized incentives because Defendants insert themselves into the supply chain.  Defendants PromoHunt and Wavering, therefore, intentionally interfere with the S&S Site to increase PromoHunt's website traffic.

43.    On information and belief, after users download the browser extension, PromoHunt requires users to link their S&S accounts, *i.e.*, upload or link their S&S login credentials or API Keys.



44.    Once users have done so, Defendant PromoHunt displays S&S's proprietary information, such as bespoke pricing and real-time inventory, on the Price Comparison Tool without S&S's authorization.

45.     On information and belief, Defendant PromoHunt scrapes proprietary information from the S&S Site in order to display it on the PromoHunt Site after converting traffic from the S&S Site to its own.  This gives S&S's competitors the means to interfere with prospective sales by matching or undercutting prices they would not otherwise have access to.  Defendant PromoHunt also uses S&S's non-public inventory and pricing information in its promotional materials.

46.     The S&S TOU allows authorized S&S customers a limited license to access the S&S Site for specified, permitted uses.  Defendants' actions have violated and have caused S&S's customers to violate multiple provisions of the S&S TOU, including, but not limited to, Section 2, which explicitly provides that "the login, password, and API key, if provided by S&S, are provided for the use of the Registered User only are not transferable and may not be shared with other users or businesses," and Section 8, which explicitly prohibits the use of "another user's or business's login credentials or API key to access the Site."

47.     On information and belief, some suppliers, including S&S's direct competitors, pay Defendant PromoHunt to be featured more prominently on the Price Comparison Tool and to get access to S&S's confidential and proprietary information, such as bespoke customer pricing, real-time inventory, and customer order history.  The improperly scraped information Defendant PromoHunt provides these suppliers with information they could not otherwise obtain, and it enables these suppliers to use S&S's own proprietary information to compete against S&S.

48.     On information and belief, Defendant PromoHunt improperly uses other users' login credentials and API Keys to acquire S&S's proprietary information in order to bolster the products of competitors, market its own services, and mislead prospective customers into believing that it has authorization to use S&S's proprietary information in these ways.

14

49.     On information and belief, Defendants PromoHunt, Wavering, and Bidpress also improperly use their own accounts and API Keys to obtain S&S's proprietary information and trade secrets and use this information to market the Price Comparison Tool on the PromoHunt Site.

50.     Defendants never received authorization to place S&S's proprietary information and trade secrets on its Price Comparison Tool; never received authorization to use S&S's proprietary information and trade secrets to market the Price Comparison Tool; and never received authorization to mislead the S&S Site visitors by redirecting them to the PromoHunt website, where Defendant PromoHunt improperly displays S&S's proprietary information and trade secrets.  Moreover, as Registered Users of S&S, Defendants did all of the foregoing while subject to the S&S TOU, further indicating their intent to take advantage of S&S's success.

### 3.     Defendants PromoHunt and Wavering Improperly Use S&S Trademarks to Market PromoHunt

51.     Defendants PromoHunt and Wavering have also used the S&S Marks in commerce to advertise PromoHunt's services in a manner likely to confuse consumers as to its association, affiliation, endorsement, or sponsorship with or by S&S.

52.     The PromoHunt Site features and/or has featured the S&S Marks and displays images from the S&S Site.  Defendant Wavering demonstrates in a promotional video how the Price Comparison Tool works.  In doing so, he prominently features the S&S Marks:

15



53.     Defendants PromoHunt and Wavering never received authorization to use the S&S Marks.

**F.      Defendants' Unauthorized and Unlawful Actions Continued Even After Receiving a Cease and Desist Letter**

54.     On April 2, 2025, S&S sent a cease and desist letter to Defendant Wavering, notifying him that PromoHunt's access to the S&S Site violated the S&S TOU, that PromoHunt was inducing S&S customers to violate the S&S TOU, and that PromoHunt was infringing on its intellectual property rights.

55.     On information and belief, Defendants continue to access or are attempting to access S&S's computer systems and the S&S Site even after receiving the April 2, 2025, cease and desist letter.

16

## CLAIMS FOR RELIEF

### Count I:
### Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030, *et seq.*
### Against All Defendants

56.     S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

57.     The S&S Site and servers are involved in interstate and foreign commerce and are protected computers under 18 U.S.C. § 1030(e)(2).

58.     Defendant PromoHunt knowingly accessed proprietary information via the Price Comparison Tool.

59.     On information and belief, Defendants PromoHunt, Wavering, and Bidpress knowingly accessed S&S's proprietary information from the S&S Site through scraping.

60.     Defendants' access was without authorization or in excess of authorization as defined by the S&S TOU, because the purpose of the access was to disclose non-public proprietary information to competitors and hijack sales from the S&S Site by redirecting consumers to the PromoHunt Site.

61.     S&S has suffered damage and loss, aggregating at least $5,000 in value in any one-year period, including, but not limited to, lost sales.

62.     Defendants' unlawful access to and theft of S&S's proprietary information through unauthorized access of the data on the S&S Site caused S&S irreparable injury.  Unless restrained and enjoined, Defendants will continue such acts.  S&S's remedies at law are not adequate to compensate it for these threatened injuries, entitling S&S to remedies including injunctive relief as provided by 18 U.S.C. § 1030(g).

17

**Count II:**
**Misappropriation of Trade Secrets Under the Defend Trade Secrets Act (DTSA),**
**18 U.S.C. § 1836**
**Against All Defendants**

63. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

64. S&S sells its products and services in interstate commerce, transacting and doing business with customers throughout the United States.

65. S&S's trade secrets encompass customer-specific pricing information and real-time inventory, which is not publicly available and is not readily ascertainable by others in the industry.

66. S&S has taken considerable measures to maintain the secrecy of its customer pricing and real-time inventory information, including by requiring registered customers input a password to access their custom pricing and requiring customers to agree to the S&S TOU, which prohibits the disclosure or unauthorized use of such information.

67. S&S's customer pricing and real-time inventory information derives independent economic value from being kept secret. Exposing such information could enable competitors to undercut S&S's pricing and divert customers.

68. Aggregating such information taken from many different customers enables Defendants or S&S's competitors with whom Defendants share such information to reverse engineer S&S's pricing strategy and inventory strategy, which provides a competitive advantage.

69. Defendants knowingly used improper means to acquire S&S's customer pricing and real-time inventory information when they used S&S customer login credentials and/or API Keys without authorization to access S&S's computer systems and customer accounts or in excess of authorization under the S&S TOU.

18

70.     On information and belief, Defendants have provided S&S's competitors with its pricing information and inventory information.

71.     Further, Defendants PromoHunt and Wavering have featured S&S's proprietary information in promotional materials for the Price Comparison Tool and on the PromoHunt Site after diverting users from the S&S Site to its own via the Price Comparison Tool.

72.     S&S has been and will continue to be damaged as the result of Defendants' misappropriation of S&S's valuable pricing and real-time inventory information.

**Count III:**
**Violation of the Illinois Trade Secrets Act, 765 ILS 1065**
**Against All Defendants**

73.     S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

74.     S&S's customer-specific pricing information and real-time inventory is not publicly available and is not readily ascertainable by others in the industry.

75.     S&S has taken considerable measures to maintain the secrecy of its customer pricing, including by requiring registered customers input a password to access their custom pricing and requiring customers to agree to the S&S TOU, which prohibits the disclosure or unauthorized use of such information.

76.     S&S's customer pricing information derives independent economic value from being kept secret.  Exposing such information could enable competitors to undercut S&S's pricing and divert customers.

77.     The pricing and inventory information that Defendants stole from many different customers reveals S&S's pricing strategy and inventory strategy, which provides a competitive advantage.

19

78.     Defendants knowingly used improper means to acquire S&S's customer pricing and inventory information when it used S&S customer login credentials and/or API Keys without authorization to access S&S's computer systems and customer accounts or in excess of authorization under the S&S TOU.

79.     On information and belief, Defendants have provided S&S's competitors with its pricing information.

80.     Further, Defendants PromoHunt and Wavering have featured S&S's proprietary information in promotional materials for the Price Comparison Tool and on the PromoHunt Site after diverting users from the S&S Site to its own via the Price Comparison Tool.

81.     S&S has been and will continue to be damaged as the result of Defendants' misappropriation of S&S's valuable pricing and real-time inventory information.

**Count IV:**
**Trespass to Chattels**
**Against Defendant PromoHunt**

82.     S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

83.     The S&S Site is valuable digital real estate that S&S has invested extensive resources in.  Websites, just like brick and mortar assets, are property.  S&S has increased its website's value by attracting more than 100,000 active customers on its website annually, averaging 50,000 users completing an online purchase each month.

84.     Defendant PromoHunt intentionally and without permission from S&S interfered with S&S's possessory interest in its website by improperly displaying the Price Comparison Tool on the S&S Site.  Defendant PromoHunt's Price Comparison Tool takes away digital real estate from the S&S Site while promoting Defendant PromoHunt's own content, as well as the products

20

of S&S's direct competitors, who on information and belief pay Defendant PromoHunt for this product placement.

85.     By blocking some of the contents of the S&S Site, the Price Comparison Tool substantially interferes with and impairs the S&S Site's published output.

86.     Placing the Price Comparison Tool on the S&S Site interferes with prospective sales by affording competitors the opportunity to match or undercut prices it would not otherwise have access to.  The Price Comparison Tool's diversion of S&S customers away from the S&S Site and to Defendant PromoHunt's own website also directly interferes with S&S's sales by drawing away potential purchases.

87.     As a direct and proximate result of Defendant PromoHunt's conduct, S&S has suffered damages, including but not limited to S&S's substantial expenditure of resources to investigate and remediate Defendant PromoHunt's conduct, and to hire a third-party service to do the same.  Defendant PromoHunt's conduct has also materially devalued the S&S Site and exposed S&S to potential reputational and professional harm.

**Count V:**
**Trademark Infringement, 15 U.S.C. § 1125(a)**
**Against Defendants PromoHunt and Anthony Wavering**

88.     S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

89.     S&S owns the S&S Marks, which it uses to identify and distinguish S&S's goods and services from those of others.  At all relevant times, Defendants PromoHunt and Wavering exercised ownership or control over online promotion for its services and websites and knowingly infringed S&S's trademark rights in online promotion for PromoHunt's services and website.

90. Defendants PromoHunt and Wavering's use of the S&S Marks in interstate commerce is likely to cause customer confusion or to cause mistake or to deceive as to the origin of the services offered and sold by Defendant PromoHunt and as to their affiliation, connection, or association with and/or endorsement or approval by S&S.

91. Defendants PromoHunt and Wavering are using and have used more of the S&S Marks than reasonably necessary to identify S&S's products and services, including in PromoHunt's own marketing materials.

92. Defendants PromoHunt and Wavering have used and continue to use marks identical to the S&S Marks in violation of 15 U.S.C. § 1125(a).

93. Defendant PromoHunt and Defendant Wavering's use of the S&S Marks has caused and, unless enjoined by this Court, will continue to cause injury to S&S's goodwill and reputation, for which S&S has no adequate remedy at law.

**Count VI:**
**False Sponsorship, 15 U.S.C. § 1125(a)**
**Against Defendants PromoHunt and Anthony Wavering**

94. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

95. Defendant PromoHunt and Defendant Wavering's use in commerce of the S&S Marks is likely to cause consumer confusion by creating the false and misleading impression that S&S (and its goods and services) are associated or connected with Defendant PromoHunt, or have the sponsorship, endorsement or approval of S&S. They do not.

96. Defendant PromoHunt and Defendant Wavering's use of the S&S Marks has caused and, unless enjoined by this Court, will continue to cause, injury to S&S's goodwill and reputation, for which S&S has no adequate remedy at law.

22

97. Defendant PromoHunt and Defendant Wavering's use of the S&S Marks has caused S&S to lose sales and/or Defendant PromoHunt to profit.

98. Defendant PromoHunt and Defendant Wavering's actions demonstrate an intentional, willful, and malicious intent to trade on the goodwill associated with the S&S Marks and have caused S&S irreparable harm.

99. Defendant PromoHunt and Defendant Wavering have caused and are likely to continue causing substantial injury to the public and to S&S. S&S is therefore entitled to injunctive relief and to recover Defendant PromoHunt's profits, and/or S&S's actual damages, as well as S&S's costs and attorneys' fees under 15 U.S.C. §§ 1116 and 1117.

**Count VII:**
**Tortious Interference with Contract**
**Against Defendants PromoHunt and Anthony Wavering**

100. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

101. S&S has valid and enforceable contracts with its registered customers, who agree to abide by the S&S TOU when they access the S&S Site.

102. The S&S TOU allows authorized S&S customers a limited license to access the S&S Site for use permitted in the TOU.

103. The S&S TOU prohibits users from sharing their login information with other users or businesses.

104. The S&S TOU prohibits users from downloading, using, or exploiting any portion of the S&S Site to provide any commercial services.

105. The S&S TOU prohibits users from sharing S&S's data with any other business or user.

23

106.     Defendants PromoHunt and Wavering knew or should have known of the existence of the terms of the S&S TOU because they are Registered Users.

107.     Defendants PromoHunt and Wavering intentionally and improperly caused S&S's customers to breach the S&S TOU by soliciting, obtaining, or using customers' login credentials or API Keys to access the password-protected portions of the S&S Site and to scrape S&S's confidential and proprietary business information.

108.     Defendant PromoHunt and Wavering's intentional interference with S&S's contractual relations with its customers was without justification.

109.     As a direct and proximate result of Defendant PromoHunt and Defendant Wavering's tortious interference with S&S's contracts, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendants' unauthorized access to S&S's systems.

**Count VIII:**
**Tortious Interference with Business Relationships**
**Against Defendants PromoHunt and Anthony Wavering**

110.     S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

111.     S&S has spent years developing strong business relationships with its customers, who customize S&S's supply of imprintable apparel and accessories with their own creative designs for their customers, the end-users.

112.     Defendant PromoHunt and Defendant Wavering knew or should have known of the business relationship between S&S and its customers.

24

113. Defendant PromoHunt and Defendant Wavering purposefully and knowingly interfered with S&S's business relationships with its customers by superimposing the Price Comparison Tool over the content on S&S's website and diverting S&S customers to the PromoHunt Site without any disclosure. Upon information and belief, S&S's customers believe that they are still on the S&S Site and may make purchases from PromoHunt rather than directly from S&S. Because Defendants insert themselves into the supply chain, S&S customers are not able to take full advantage of S&S's proprietary pricing and shipping.

114. Defendant PromoHunt and Defendant Wavering further purposefully and knowingly interfered with S&S's business relationships with its customers by causing its customers to violate the S&S TOU, which states in Section 8, for example, that registered users may not "[c]opy, change, distribute, translate, decompile, disassemble, reverse engineer, loan, lease or sublicense software obtained from the Site or any copy thereof"; "[u]se any device, software, or routine that interferes with the proper working of the Site"; "[u]se another user's or business's login credentials or API key to access the Site"; or "[o]therwise attempt to interfere with the proper working of the Site."

115. Defendant PromoHunt and Defendant Wavering's interference with S&S's business relationships with its customers was intentional, willful, and malicious through its use of the Price Comparison Tool to increase PromoHunt's website traffic and divert sales away from S&S.

116. As a direct and proximate result of Defendant PromoHunt and Defendant Wavering's tortious interference with S&S's business relationships, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive

25

advantage, and substantial resources employed in combatting Defendant PromoHunt's unauthorized access to S&S's systems.

**Count IX:**
**Breach of Contract**
**Against All Defendants**

117. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

118. Defendants are registered users of S&S.

119. Defendants consented to the S&S TOU by creating accounts and using them to access the public and password-protected portions of the S&S Site.

120. The S&S TOU is a valid and enforceable contract between S&S and Defendants.

121. S&S substantially performed under the terms of the contract by allowing Defendants a limited license to access the S&S Site for specified, permitted uses.

122. Section 2 of the S&S TOU states: "If you have received a login and password or API key that belong to another person, you are not authorized to use that login account or API key." On information and belief, Defendants PromoHunt and Wavering used other customers' login accounts and/or API keys to access the S&S Site in violation of Section 2.

123. Section 8 of the S&S TOU states:

> You are responsible for all of your User Content. Likewise, you are responsible for respecting S&S's and third parties' rights with respect to Content that appears on the Site and agree not to download, scrape, email or otherwise transmit such Content in violation of S&S's and third parties' rights. You agree to use the Site solely to accommodate your own personal or business needs. Except as explicitly permitted and contemplated by the Services, you may not use or exploit any portion of the Site, Content or Services to provide any commercial services, 'spam' or other unsolicited communications to third parties or offer any portion of the Site or Content to any third party. You shall not use the Site or Services to: . . . Impersonate another person or entity, including without limitation, a representative or customer of S&S or its [] respective officers, directors, employees or agents,

26

falsely represent or misrepresent your affiliation with another person or entity, or forge headers or otherwise manipulate identifiers that would disguise the origin of any User Content transmitted to or through the Site.

124. Section 8 further states that Registered Users agree not to: "[c]opy, change, distribute, translate, decompile, disassemble, reverse engineer, loan, lease or sublicense software obtained from the Site or any copy thereof"; "[u]se any device, software, or routine that interferes with the proper working of the Site"; "[u]se another user's or business's login credentials or API key to access the Site"; or "[o]therwise attempt to interfere with the proper working of the Site."

125. Upon information and belief, Defendants used their S&S accounts to provide commercial services; specifically, upon information and belief, Defendants downloaded, scraped, or otherwise transmitted S&S's confidential and proprietary business information from the Site in order to create the Price Comparison Tool.

126. Upon information and belief, Defendants used and exploited the S&S Site and its content to provide their own commercial services, including by creating the Price Comparison Tool and directing users from the S&S Site to the PromoHunt Site in breach of Section 8 of the S&S TOU.

127. As a direct and proximate result of Defendants' breaches of the S&S TOU, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendants' unauthorized access to S&S's systems.

27

**Count X:**
**Violation of Illinois Computer Crime Prevention Law, 720 ILCS 5/17-51(a)(4)**
**Against Defendants PromoHunt and Wavering**

128. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

129. Upon information and belief, Defendant PromoHunt and Defendant Wavering knowingly and without authorization by S&S inserted the Price Comparison Tool onto S&S's customers' browsers knowing that the program or commands would cause loss to S&S.

130. Defendant PromoHunt and Defendant Wavering's actions were without authorization or in excess of authorization as defined by the S&S TOU, because the purpose of the Price Comparison Tool is to disclose non-public proprietary information to competitors and hijack sales from the S&S Site by redirecting consumers to the PromoHunt Site.

131. As a direct and proximate result of Defendant PromoHunt's conduct, S&S has suffered and will continue to suffer irreparable harm, including the loss of sales, customers, goodwill, competitive advantage, and substantial resources employed in combatting Defendant PromoHunt's unauthorized access to S&S's systems.

**Count XI:**
**Violation of the Uniform Deceptive Trade Practices Act, 815 ILCS 510**
**Against Defendants PromoHunt and Anthony Wavering**

132. S&S realleges and incorporates by reference, as if fully set forth herein, the allegations in all the preceding paragraphs.

133. Defendant PromoHunt and Defendant Wavering engaged in deceptive trade practices by using in commerce the Price Comparison Tool on the S&S Site and the S&S Marks, which is likely to cause consumer confusion or misunderstanding as to the source, sponsorship, approval, or certification of S&S's services.

28

134. Defendant PromoHunt and Defendant Wavering's actions demonstrate an intentional, willful, and malicious intent to cause confusion or misunderstanding as to the source, sponsorship, approval, or certification of S&S's services.

135. Defendant PromoHunt and Defendant Wavering have caused and are likely to continue causing substantial injury to the public and to S&S. S&S is therefore entitled to injunctive relief and to recover costs and attorneys' fees.

## JURY DEMAND

136. Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury.

## PRAYER FOR RELIEF

137. Defendants and all of their agents, officers, employees, representatives, successors, assigns, attorneys, and all other persons acting for, with, by, through, or under authority from Defendants, or in concert or participation with Defendants, and each of them, be enjoined permanently from:

a. Imposing the Price Comparison Tool on the S&S Site;

b. Using any S&S user's login credentials or API Key to access the S&S Site;

c. Extracting or scraping content from the S&S Site;

d. Using the S&S Marks or any other confusingly similar copy, reproduction, colorable imitation, or simulation of the S&S Marks on or in connection with their businesses;

e. Displaying confidential and proprietary S&S pricing and inventory information on the PromoHunt Site and in advertisements, social media posts, and promotional videos; and

f. Violating, or causing others to violate, any provisions of S&S's TOU.

138. Defendants be compelled to account to S&S for any and all profits derived by Defendants from their infringing and violative acts.

29

139.    S&S be awarded all damages caused by the acts forming the basis of this Complaint.

140.    S&S's actual damages, Defendants' profits, and the costs of the action, including attorneys' fees, under 15 U.S.C. § 1117(a).

141.    S&S be awarded prejudgment and post-judgment interest on all monetary awards.

142.    S&S be granted such other and further relief as this Court may deem just and proper.


Dated: January 29, 2026

Yvette Ostolaza (*pro hac vice forthcoming*)
**SIDLEY AUSTIN LLP**
2021 McKinney Ave, #2000
Dallas, Texas 75201
(214) 981-3300
yvette.ostolaza@sidley.com

/s/ Steven J. Horowitz
Steven J. Horowitz
**SIDLEY AUSTIN LLP**
One South Dearborn Street
Chicago, Illinois 60603
(312) 853-7000
shorowitz@sidley.com

Randi W. Singer
**SIDLEY AUSTIN LLP**
787 Seventh Avenue
New York, New York 10019
(212) 839-5300
randi.singer@sidley.com

*Attorneys for Plaintiff*

30